**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CODY J. SHULTZ,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JONAH LAWS,**<br>**ROBERT SACOJAWICH,**<br>**TRENTON TAYLOR,**<br>**CHELSEY CLARK, and**<br>**OLNEY IL FIRE DEPARTMENT,**<br><br>**Defendants.** | **Case No. 25-cv-02034-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Cody Shultz, an inmate of the Illinois Department of Corrections (IDOC), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for constitutional deprivations stemming from his arrest in Richland County, Illinois. The Second Amended Complaint (Doc. 24) is now before the Court for review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE SECOND AMENDED COMPLAINT

Plaintiff alleges the following: On June 2, 2025, he woke up to his girlfriend hitting him "with something and splitting [his] eye open." (Doc. 24, p. 6). After hitting him, his girlfriend ran

across the street to the neighbor's house. (*Id.*). At the time, Plaintiff was "coming off a long use of drugs," and the event caused him to have a sudden mental breakdown. (*Id.*). He then attempted to hang himself on the front porch using his belt. (*Id.*). Plaintiff's neighbor, Timothy Johnson, who was outside with Plaintiff's girlfriend, saw that Plaintiff was attempting to kill himself, and so, Johnson ran over to Plaintiff's house and "cut [him] down." (*Id.*). Plaintiff remained in a "troubled state," however, and so he piled up some of his furniture on the front porch, set it on fire, and closed himself in his house. (*Id.*). Once the "fire got big," Plaintiff, "snap[ped] out of the mindstate," and he extinguished the fire with the garden hose. (Doc. 24, p. 6).

After Plaintiff put out the fire, Officers Jonah Laws and Robert Sacojowich and the Richland County Fire Department arrived. (Doc. 24, p. 7). Plaintiff told Laws and Sacojawich to stay off his property unless they had a warrant. (*Id.*). The officers then placed Plaintiff in handcuffs and told him he was being detained. (*Id.*). Even though the fire had been extinguished, the fire department then used the ladder to break the upstairs window and enter his house. (*Id.*). Members of the fire department found "something" in the house. (*Id.*). Officers Laws, Sacojawich, and Taylor informed Plaintiff that he was being arrested for domestic battery for "putting hands on [his] girlfriend" and possession of meth. (*Id.*).

Plaintiff told the officers that he wanted to press charges against his girlfriend for hitting him. (Doc. 24, p. 8). Plaintiff argued that he had not hurt his girlfriend, and the neighbor, Timothy Johnson, told the officers that he had witnessed Plaintiff's girlfriend hitting and choking herself before the officers arrived at the scene. (*Id.*). The officers did not listen to Plaintiff or Johnson. (*Id.*). The officers also disregarded statements made by Plaintiff's stepmother informing them that Plaintiff's girlfriend had similar issues with previous boyfriends and "domestic charges." (*Id.*). Plaintiff's stepmother told the officers that Plaintiff has never hurt another person. (*Id.*).

Plaintiff was taken to Richland County Jail by Officer Robert Sacojawich. (Doc. 24, p. 8). Plaintiff again stated he wanted to press charges against his girlfriend but was ignored. (*Id.*). Plaintiff was processed and booked by the correctional officers at the jail, who took pictures of the injury caused by his girlfriend. (*Id.*). Plaintiff then asked the correctional officers to speak to a counselor or a mental health provider. (*Id.* at p. 8-9). This request was ignored, and he was taken to a cell. (*Id.*).

At Plaintiff's first court appearance, Plaintiff's attorney made the argument that Plaintiff should have been seen by mental health and involuntarily committed to a mental health facility, rather than arrested and taken to jail. (Doc. 24, p. 9). The prosecutor falsely stated that Plaintiff had been evaluated by a mental health professional, but she was corrected by Plaintiff's lawyer. (*Id.*). The prosecutor then stated that a mental health professional was waiting at the jail to evaluate Plaintiff when the hearing concluded. (*Id.*). When Plaintiff returned to jail from his court appearance, he was not seen by a mental health professional. (*Id.*). Finally, the following day, Plaintiff was seen by a counselor named Makenzie. (*Id.*). When Makenzie arrived to speak to him, she "had no idea what was goin[g] on or that [Plaintiff] was having mental health issues." (*Id.*). She had been at the jail for an appointment with another client and was told to also meet with Plaintiff. (*Id.*). After speaking with Plaintiff, Makenzie stated that Plaintiff should have been admitted to a mental health facility. (Doc. 24, p. 10).

During the following weeks at the jail, Plaintiff "struggled with [his] mental health." (Doc. 24, p. 10). Eventually, he asked Correctional Officer Bill Novak to meet with a member of the mental health crisis team. (*Id.*). Novak called Makenzie, and Plaintiff spoke to her on the phone. (*Id.*). He told Makenzie that he wanted to be admitted to a mental health hospital for suicidal thoughts. (*Id.*). Makenzie responded that she would contact the State's Attorney, Chelsey Clark, and "see what she could do." (*Id.*). She told Plaintiff she would "get back with [him] in a few

hours." (*Id.*). Later that evening, Plaintiff asked about his transfer to a mental health hospital, and no one knew anything about the request. (*Id.*). A few days later, Makenzie met with Plaintiff at the jail. (Doc. 24, p. 10). She told Plaintiff that she had not heard from the States' Attorney or the court in response to the request. (*Id.*).

At Plaintiff's next court appearance, Plaintiff's lawyer told him that the prosecutor would drop the charges if he agreed to plead guilty to a prior charge from April 2024. (Doc. 24, p. 10). Plaintiff's lawyer explained that if Plaintiff did not take the deal, then the State's Attorney was going to "send [him] away for a long time." (*Id.* at p. 11). Plaintiff agreed to "plead out to 5 years at 50%." (*Id.*).

## Discussion

Based on the allegations and Plaintiff's articulation of his claims in the Second Amended Complaint, the Court designates the following counts:

**Count 1:** Fourth Amendment claim against Laws, Sacojawich, and Taylor for Plaintiff's unlawful arrest on June 2, 2025.

**Count 2:** Fourth/Fourteenth Amendment claim against Laws, Sacojawich, Taylor, and State's Attorney Clark for denying Plaintiff mental health treatment while he was in custody at the Richland County Jail.

**Count 3:** Fourth Amendment claim against the Olney Fire Department, Sacojawich, and Taylor for illegal search and seizure on June 2, 2025.

**Count 4:** Sixth Amendment claim against Laws, Sacojawich, and Taylor for ignoring the statements of witnesses at the time of Plaintiff's arrest on June 2, 2025.

**Count 5:** Fifth Amendment claim against Taylor and Sacojawich for refusing to press charges against Plaintiff's girlfriend.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned**

**in the Second Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard**.

**Count 1**

Count 1 is governed by the Fourth Amendment, which protects individuals from unreasonable searches and seizures. U.S. CONST. amend IV. A plaintiff challenging an arrest under the Fourth Amendment must set forth allegations showing that he was arrested without probable cause. *Gonzalez v. City of Elgin*, 578 F.3d 526, 538 (7th Cir. 2009). Probable cause for an arrest exists where the "facts and circumstances within the officer's knowledge…are sufficient to warrant a prudent person or one of reasonable caution, in believing…that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 537 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). If probable cause to arrest exists, "it is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006).

Again, Plaintiff has failed to put forth facts from which the Court can plausibly infer that his arrest lacked probable cause and was therefore unlawful. He does not disclose any information about the charge(s) or case brought against him after his arrest on June 2, 2025. (*See* Doc. 21, p. 4). Similarly, he does not reveal any information about the prior 2024 charges against him that were pending at the time of his arrest.

To the extent Plaintiff is claiming the arrest was unlawful because the meth found in the house was premised on an unlawful search and seizure by the fire department, this argument also fails. The Court need not decide whether the firefighters had probable cause to enter the house because there certainly was probable cause to arrest Plaintiff after discovering meth. *See Cannon*

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*v. Christopher*, No. 1:06-CV-267, 2007 WL 2609893, at *5 (N.D. Ind. Sept. 6, 2007); *Townes v. City of New York*, 176 F.3d 138, 149 (2d Cir. 1999).

Likewise, the fact that the statements made by Plaintiff and Taylor Johnson about the domestic battery incident differed from the initial statements made by his girlfriend alleging that he had put his hand on her does not establish a lack of probable cause. *See Lambach v. Conte*, No. 22-3118, 2023 WL 4027535, at *3 (7th Cir. June 15, 2023) (citing *Holmes v. Vill. of Hoffman Est.*, 511 F.3d 673, 680 (7th Cir. 2007)). "[A]s long as a reasonably credible witness or victim informs the police that someone has committed a crime, or is committing, a crime, the officers have probable cause." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 707 (7th Cir. 2012). Furthermore, "once probable cause has been established, officials have 'no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence.'" And "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa*, 442 F.3d at 547. Count 1 is dismissed.

**Count 2**

The proper analytical framework for Plaintiff's claim that he was deprived of constitutionally adequate mental health care following his arrest depends on his status as an arrestee or a pretrial detainee at the time of the alleged deprivation. Because he claims that Officers Laws, Sacojawich, and Taylor denied him mental health care at the time of arrest but before judicial determination of probable cause, his claim against the officers falls under the Fourth Amendment. *See e.g., Pulera v. Sarzant*, 966 F.3d 540, 549 (7th Cir. 2020). His claim against State's Attorney Clark appears to have occurred after he appeared before a judge and so is governed by the Fourteenth Amendment. "This ultimately matters little because the standards are "effectively the same" under either amendment: whether a government official's actions were "objectively unreasonable under the circumstances." *Grant v. Krolikowski,* No. 23-cv-551-jdp,

2026 WL 3168435, at *4 (W.D. Wisc. October 22, 2026) (citing *Pulera*, 966 F.3d at 550; *Raddant v. Douglas Cnty., Wisconsin*, 170 F.4th 583, 590 (7th Cir. 2026)).

Plaintiff appears to argue that Officers Laws, Sacojawich, and Taylor violated his constitutional rights following his arrest by taking him to the Richland County Jail, rather than having him mentally evaluated and involuntarily committed at a mental health facility. (Doc. 24, p. 9). There is no constitutional right "to be involuntarily committed in a mental health facility." *Wilson v. Formigoni*, 42 F.3d 1060, 1066 (7th Cir. 1994). Thus, Defendants failure to take him to jail rather than involuntarily commit Plaintiff, does not on its own state a constitutional claim. However, once a person is taken into custody, the state "assumes an obligation to provide for his basic needs, including 'food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 1005 (1989). Thus, the issue is whether Plaintiff has stated a plausible claim against Officers Laws, Sacojawich, and Taylor for denying him mental health care after his arrest and "while in custody at Richland County Jail." (Doc. 24, p. 12).

Although the officers were aware the Plaintiff had just engaged in self-harming behavior and had been informed by Plaintiff's stepmother that Plaintiff had a history of "suicidal tendencies and mental breakdowns," (Doc. 24, p. 8), the Court finds that the arresting officers did not act unreasonably by not allowing Plaintiff to immediately speak to a mental health care professional at the time of his arrest. *See Ferguson v. Cook Cnty. Corr. Facility/Cermak*, 836 F. App'x 438 (7th Cir. 2020) (affirming dismissal of the complaint and the finding that the arresting officer did not act unreasonably by taking the plaintiff to police station instead of seeking immediate treatment based on erratic behavior). Plaintiff states that by the time the officers arrived he was no longer in acute distress and had "snapped" out of his self-harming mental state. (Doc. 24, p. 6). Nor does he claim that he was a danger to himself or others at the time or that there was a mental health

professional on site. Thus, the Court cannot plausibly infer that it was reckless or unreasonable for the officers to first take Plaintiff directly to the jail upon his arrest, where he could receive evaluation and appropriate care.

Once Plaintiff arrived at the jail, Plaintiff asserts that he asked the correctional officers at the jail to speak with a mental health professional but was ignored. (Doc. 24, p. 9). Officers Laws, Sacojawich, and Taylor, however, cannot be liable to Plaintiff's denial of care once Plaintiff was at the jail and no longer in their care. As another district court in this Circuit has observed, the Court is "not aware of any authority holding that an officer has a constitutional duty to ensure that an arrestee will receive proper care after he is transferred to the jail." *McMullin v. Meyer*, No. 22-CV-260-JDP, 2023 WL 2163086, at *2 (W.D. Wis. Feb. 22, 2023) (citing *Paine v. Cason*, 678 F.3d 500, 511 (7th Cir. 2012)). The Court therefore finds that Plaintiff has failed to state a claim for the denial of mental health care against Officers Laws, Sacojawich, and Taylor. Count 2 is dismissed against them.

Count 2 is also dismissed as to State's Attorney Clark. Plaintiff appears to premise his claim against Clark on the fact that she wrongly told the judge at an initial court appearance that he had been evaluated by a mental health professional and then that a mental health professional was waiting at the jail to speak with him. (Doc. 24, p. 9). When Plaintiff returned to the jail following the hearing, however, there was no one there to meet with him. Furthermore, Plaintiff alleges that once a mental health professional contacted the court and the State's Attorney's Office with a request to transfer him to a mental health institution, Clark again did not take the necessary action to have him transferred to the appropriate facility.

It could be reasonably argued that Clark did not have prosecutorial immunity regarding the task of arranging mental health care for Plaintiff. *See Craft v. Burns*, No. 22-CV-119-DWD, 2024 WL 1285418, at *4 (S.D. Ill. Mar. 26, 2024) (refraining from deciding the issue of absolute and

qualified immunity at the motion to dismiss state where the parties disputed whether the prosecutor was executing prosecutorial or administrative duties regarding the detainee's provision of mental health care at the jail). Regardless, Plaintiff has still failed to state a claim. While Plaintiff's suicidal ideation is a serious medical need, he has not pled facts allowing the inference that Clark "acted purposefully, knowingly, or perhaps even recklessly," *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018), in failing to ensure that Plaintiff was transferred to a mental health facility and that such conduct was objectively unreasonable. Given the totality of the facts and circumstances, Clark's conduct could at most be gross negligence, which does not amount to a Fourteenth Amendment violation. *Id.* at 353. According to Plaintiff, he spoke to Makenzie, a mental health professional, the day following the hearing, and there is no indication that Clark knew that the Plaintiff required additional care or that Makenzie believed Plaintiff should have been admitted to a mental health facility at the time of his arrest. When Plaintiff continued to "struggle" with his mental health and asked a correctional officer to speak with a mental health professional, he was promptly allowed to do so. (*See* Doc. 24, p. 10). While Plaintiff's request to Makenzie to be transferred to a mental health facility was ultimately not granted, again, Plaintiff does not provide factual support to allow the conclusion that Clark knew about Plaintiff's ongoing mental health struggles and the request for a transfer to a mental health facility, and then knowingly or recklessly failed to give her "consent" to such request. (*Id.*). Furthermore, other than a transfer, it does not seem that Plaintiff requested and was denied any other form of mental health care while at the jail. As a detainee, he did not have a constitutional right to demand specific care or receive the best care possible. *Podkulski v. Dart*, 823 F. Supp. 3d 818, 825 (N.D. Ill. 2026) (citations omitted). For these reasons, Count 2 is dismissed against Clark.

**Count 3**

Plaintiff asserts that the members of the Olney Fire Department and Officers Sacojawich and Taylor conducted an unlawful warrantless search of his home in violation of the Fourth Amendment. Plaintiff, however, only names the Olney Fire Department as a defendant and not individual firefighters. (Doc. 24, p. 3). A fire department is not a "person" within the meaning of Section 1983 and cannot be sued under *Monell* case law. *See Best v. City of Portland*, 554 F.3d 698, 698 (7th Cir. 2009) n.* (7th Cir. 2009). Accordingly, because a fire department is not a suable entity under Section 1983, Count 3 is dismissed against the Olney Fire Department.

As to Officers Sacojawich and Taylor, Plaintiff does not allege that they searched or even entered his home. Based on the allegations, Plaintiff was arrested outside of his home. (Doc. 24, p. 7). Although Plaintiff claims the officers stepped onto his property without permission, trespass alone is "insufficient to establish a Fourth Amendment violation." *Davis v. City of Milwaukee*, No. 13-CV-982-JPS, 2015 WL 5010459 (E.D. Wis. Aug. 21, 2015), at (E.D. Wis. 2015) (*United States v. Karo,* 468 U.S. 705, 713 (1984)). As discussed above, Plaintiff has not sufficiently pled facts allowing the inference that the officers were without probable cause to arrest him, and because they did so outside of his home, the arrest does not violate the Fourth Amendment. *See Payton v. New York,* 445 U.S. 573, 590 (1980). Count 3 is dismissed against Sacojawich and Taylor.

**Count 4**

Plaintiff asserts that Officers Laws, Sacojawich, and Taylor violated his Sixth Amendment rights by ignoring statements made by witnesses at the time of his arrest. (Doc. 24, p. 12). To the extent Plaintiff is referencing the Confrontation Clause, the Seventh Circuit has declined to recognize a right to confrontation in criminal proceedings outside the trial context. *See United States v. Isom*, 635 F.3d 904, 907 (7th Cir. 2011). Accordingly, the officers did not violate the

Sixth Amendment by arresting Plaintiff despite the statements made by Timothy Johnson and Plaintiff's stepmother. Count 4 is dismissed.

**Count 5**

Plaintiff claims that Officers Taylor and Sacojawich violated his right to equal protection under the Fifth Amendment by "refusing to press charges" against his girlfriend. (Doc. 24, p. 12). While the decision to arrest Plaintiff rested with the police officers, the "prosecutor, not the complaining witness or the police, has the sole discretion and authority to initiate legal process by filing criminal charges." *Poznanski v. Poznanska*, 2023 IL App (3d) 220200-U, 2023 WL 2367445, at * 3 (Ill. App. Ct. 3d). Thus, Officers Taylor and Sacojawich cannot be found liable for failing to "press charges" against Plaintiff but not his girlfriend.

To state a class-of-one equal protection claim, "the police must have treated [Plaintiff] differently for either a bad reason or for no reason." *Kim v. Ritter*, 493 F. App'x 787, 789 (7th Cir. 2012); *Williamson v. Curran*, 714 F.3d 432, 448–49 (7th Cir. 2013). Plaintiff does not assert any malicious motive on the part of Defendants, and as discussed above, he has not pled that they lacked probable cause. Accordingly, Count 5 is dismissed.

Plaintiff has failed to state a constitutional claim against any named Defendant, and therefore, the Second Amended Complaint does not survive screening under 28 U.S.C. § 1915A and shall be dismissed. When a complaint fails to state a claim upon which relief may be granted, the plaintiff is ordinarily given an opportunity to amend the complaint in order to correct the deficiencies. *See* FED. R. CIV. P. 15(a). However, leave to amend need not be granted if it is clear that any amendment would be futile. *See Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013); *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994). This is Plaintiff's second attempt to state a claim, and he again is unsuccessful. Accordingly, the Court finds that any further amendment of

Plaintiff's claims in this action would be futile. The dismissal of this case will be with prejudice and without leave to amend.

## DISPOSITION

For the reasons stated above, the Second Amended Complaint (Doc. 24) and this entire action are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. The Court considers the dismissal of this action as a "strike" under 28 U.S.C. § 1915(g).

Plaintiff may appeal this Order by filing a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If he does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725–26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858–59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. Fed. R. App. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: November 10, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**